IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

BLUEHIPPO FUNDING, L.L.C.,
  a Maryland limited liability corporation, and
BLUEHIPPO CAPITAL, L.L.C.,
  a Nevada limited liability corporation

      Plaintiffs,

v.

DARRELL V. McGRAW, JR.,
  in his official capacity as ATTORNEY GENERAL
  of the STATE OF WEST VIRGINIA, and
VIRGIL T. HELTON,
  in his official capacity as SECRETARY
  of the DEPARTMENT OF REVENUE
  of the STATE OF WEST VIRGINIA,

      Defendants.

C.A. No. 2:07-0399
(Judge Copenhaver)

MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

I. INTRODUCTION

In this action, Plaintiffs BlueHippo Funding, LLC and BlueHippo Capital, LLC (together, "BlueHippo") seek a declaration that the imposition on BlueHippo of the registration and bonding provisions in the West Virginia telemarketing statutes, W.Va. Code §§ 46A-6F-101 *et seq.* (the "Telemarketing Act"), violates the Commerce Clause in the United States Constitution. BlueHippo offers to sell computers and other consumer electronics nationwide through print, television, radio, and Internet advertisements. BlueHippo has no physical presence in West Virginia, and has no agents or employees here. Nor does BlueHippo specifically direct its advertising at consumers in this state, or initiate calls to West Virginia consumers. Rather, if a West Virginia consumer wishes to purchase a product from BlueHippo, he or she calls

4901029

BlueHippo. The consumer subsequently receives products purchased directly from the original manufacturers.

Based on those undisputed facts, BlueHippo's activities are wholly interstate in nature. Consequently, pursuant to well-settled precedent, the State of West Virginia lacks the authority to impose the Telemarketing Act's registration or bonding requirements on BlueHippo. Similarly, the State may not deny BlueHippo access to West Virginia courts and/or refuse to honor or enforce BlueHippo's contracts made for interstate commerce simply because BlueHippo has not registered as a telemarketer or posted security. BlueHippo therefore respectfully requests that this Court grant its motion for summary judgment, and enter an Order (a) declaring that the telemarketing and registration provisions violate the Commerce Clause as applied to BlueHippo, and (b) enjoining the Defendant State officials from attempting to enforce those provisions against BlueHippo.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. The Parties

Plaintiff BlueHippo Funding, LLC is a Maryland limited liability corporation with its principal place of business in Baltimore, Maryland. (Compl., ¶ 5; BlueHippo Ans. to Rev. Sec. Interrog. No. 6.)[1] Plaintiff BlueHippo Capital, LLC is a Nevada limited liability corporation with its principal place of business in Baltimore, Maryland. (Compl., ¶ 6; BlueHippo Ans. to Rev. Sec. Interrog. No. 6.) Defendant Darrell V. McGraw, Jr. is the Attorney General of the

---

[1] Excerpts from the Answers of BlueHippo Funding, LLC to the Revenue Secretary's First Set of Interrogatories are attached as Exhibit 1 to Plaintiffs' Motion for Summary Judgment. Both the Revenue Secretary and the Attorney General issued identical sets of discovery to BlueHippo Funding, LLC and BlueHippo Capital, LLC, to which both companies provided the same responses. Similarly, both Plaintiffs issued identical sets of discovery to the Attorney General and the Revenue Secretary, to which those officials gave the same responses. For ease of reference and to mimimize the volume of exhibits, BlueHippo has attached only one of each of the two sets of discovery responses to its Motion, but will file the second sets upon the Court's request.

State of West Virginia, against whom BlueHippo asserts its claims in his official capacity as Attorney General. (Compl., ¶ 7; WVAG Ans., ¶ 7; Rev. Sec. Ans., ¶ 7.) Defendant Virgil T. Helton is the Secretary of the Department of Revenue of the State of West Virginia (the "Revenue Secretary" and the "Revenue Department"), and controls the Revenue Department (formerly the Department of Tax and Revenue). Plaintiffs also assert their claims against Defendant Helton in his official capacity as Revenue Secretary. (Compl., ¶ 8; WVAG Ans., ¶ 8; Rev. Sec. Ans., ¶ 8; *see also* Order dated 3/25/08 (noting Defendant Helton's appointment to replace James Robert Alsop as Revenue Secretary, and amending style of civil action).)

### B. BlueHippo's Transactions With West Virginia Consumers

BlueHippo offers to sell computers and other consumer electronics nationwide through print, radio, and television advertisements, and on the Internet. (Compl., ¶ 9; Deposition Transcript of John Burcham at 102-03 [hereinafter, "Burcham Tr. at __"].)[2] BlueHippo does not direct its advertisements at or to West Virginia consumers. Rather, BlueHippo employs various companies who determine the placement of advertisements on a national basis, *e.g.*, with particular syndicated television programs or in coupon mailers such as "Valpak." (Burcham Tr. at 102-09.)

BlueHippo's national advertisements and Internet website include a telephone number for consumers to call if they wish to purchase a computer. BlueHippo did not and does not initiate calls to consumers – including West Virginia consumers. Rather, all West Virginia consumers with whom BlueHippo has attempted to enter or has entered into a transaction initiated the

---

[2] Excerpts from the deposition transcript of Mr. Burcham, who testified as BlueHippo's corporate representative, are attached as Exhibit 2 to Plaintiffs' Motion for Summary Judgment.

telephone call to BlueHippo. (Compl., ¶¶ 10-12; BlueHippo Ans. to WVAG Interrog. No. 2;[3] Burcham Tr. at 32.) BlueHippo's contact from consumers in West Virginia is wholly through interstate telephone calls originated by those consumers. (*See id.*; *see also* Burcham Tr. at 33-34 (subsequent customer service contacts with consumer via interstate telephone calls, interstate fax, or e-mail).)

BlueHippo has no office, call center, or other physical presence in West Virginia. Compl., ¶ 13; WVAG Ans. to BlueHippo Interrog. No. 20; BlueHippo Ans. to Rev. Sec. Interrog. No. 7.)[4] Nor does BlueHippo maintain any employees, agents, representatives or salespeople in West Virginia. (Compl., ¶ 13; BlueHippo Ans. to Rev. Sec. Interrog. No. 7; WVAG Ans. to BlueHippo Interrog. No. 18.) BlueHippo also does not maintain inventory; rather, the original manufacturers ship products directly to consumers. (Burcham Tr. at 69-71.)

### C. **The Statutory Provisions At Issue.**

#### 1. **Definitions**

Article 6F of the West Virginia Consumer Credit & Protection Act, W.Va. Code §§ 46A-6F-101, *et seq.* (the "Telemarketing Act"), contains provisions relating to the regulation of telemarketing activities. West Virginia Code § 46A-6F-113(a) defines a "[t]elemarketer" as "any person who initiates or receives telephone calls to or from a consumer in this state for the purpose of making a telemarketing solicitation . . . ." West Virginia Code § 46A-6F-112(a) in turn defines a "telemarketing solicitation" to include "any communication between a telemarketer and a prospective purchaser for the purpose of selling or attempting to sell the

---

[3] Excerpts from the Answers of BlueHippo Capital, LLC to the Attorney General's First Set of Interrogatories are attached as Exhibit 3 to Plaintiffs' Motion for Summary Judgment.

[4] Excerpts from the Attorney General's Answers to BlueHippo Funding's First Set of Interrogatories are attached as Exhibit 4 to Plaintiffs' Motion for Summary Judgment.

purchaser any consumer goods or services, if it is intended by the telemarketer that an agreement to purchase the consumer goods or services will be made after . . .[t]he telemarketer communicates with a consumer by any means and invites or directs the consumer to respond by any means to the telemarketer's communications, and the telemarketer intends to enter into an agreement with the consumer for the purchase of consumer goods or services at some time during the course of one or more subsequent telephone communications with the consumer."[5]

### 2. Registration Requirements

West Virginia Code § 46A-6F-301 requires all persons seeking to act as telemarketers in West Virginia to register with the West Virginia Department of Revenue at least 60 days before offering goods or services to consumers in West Virginia through any medium, and to pay certain application and renewal fees. The Revenue Secretary depends upon businesses to self-identify as telemarketers, and undertakes no efforts to identify companies who may be operating as telemarketers without having registered; to determine whether companies who seek registration have complied with the 60-day provision cited above; or to follow up with companies who have self-identified as telemarketers on a registration form with the Division of Tax, but have failed to complete a telemarketing registration application or post security. (Bishop Tr. at 19-20, 30-33, 54, 66-67.)

---

[5] Although the Revenue Secretary is charged with determining whether a company is a telemarketer, his corporate designee (the General Counsel) conceded that the definitions contained in W.Va. Code §§ 46A-6F-112, - 113 were circular, in that the definition of "telemarketer" depends upon the existence of a "telemarketing solicitation," yet a "telemarketing solicitation" depends upon the existence of a communication with a "telemarketer." (Deposition Transcript of Michelle Duncan Bishop at 51-52 [hereinafter, "Bishop Tr. at __"], excerpts from which are attached as Exhibit 5 to Plaintiff's Summary Judgment Motion.) She could not state what type of information would be necessary for the Department of Revenue to determine whether a telemarketing solicitation had occurred, other than the nature of the company's business, and stated that the Department had never attempted to work through that circularity. (*Id.* at 45-51.)

### 3. Bonding/Security Requirements

West Virginia Code § 46A-6F-302 requires that an applicant seeking to register or renew as a telemarketer in West Virginia post a continuing surety bond executed by a fidelity and security insurance corporation licensed in West Virginia, in an amount between $100,000 and $500,000 for all such locations. The Revenue Department must approve the bond before issuing a certificate of registration to a telemarketer.[6] Alternatively, an applicant may file an irrevocable letter of credit, certificate of deposit, cash, or Government bond in the same amount. West Virginia Code § 46A-6F-302 further requires the bond to provide that the telemarketer "will pay all damages to the State or a private person resulting from any unlawful act or action by the telemarketer or its agent in connection with the conduct of telemarketing activities."

### D. Defendants' Attempts to Apply the Unconstitutional Provisions to BlueHippo

The West Virginia Consumer Credit & Protection Act, W.Va. Code §§ 46A-6F-303, 46A-6F-701, 46A-7-108, 46A-7-110, 46A-7-111, authorizes the Attorney General to seek injunctive and monetary relief for alleged violations of that statute, including the telemarketing provisions in Article 6F, and specifically, the registration and bonding requirements contained in W.Va. Code §§ 46A-6F-301, -302. In litigation currently pending before the Circuit Court of Kanawha County and otherwise, the Attorney General has asserted that BlueHippo is subject to the telemarketing provisions in W.Va. Code Chapter 46A, Article 6F, and has specifically asserted that BlueHippo is required to comply with the registration and bonding requirements

---

[6] The Revenue Secretary's corporate designee testified that the Attorney General also is heavily involved in the operation of the bonding requirements, including approval of a bond. (*See* Bishop Tr. at 26-27, 73-74, 77, 81.) The Revenue Secretary also produced documents in discovery confirming the Attorney General's involvement. (*See id.* at 83-84, & Ex. 15 thereto.) The Attorney General nonetheless has denied any knowledge of or involvement in the registration and bonding process, and in part on that basis, refused to produce a witness to testify on those subjects. (*See* WVAG Mot. for Prot. Order at 2-6, ¶¶ a-e, g.)

contained in W.Va. Code §§ 46A-6F-301, -302 before doing business with West Virginia consumers. *See* Complaint, *State of West Virginia ex. rel Darrell V. McGraw, Jr. v. BlueHippo Funding, LLC, et al.*, C.A. No. 07-C-438, Counts I-II (the "State Court Complaint").[7] Specifically, the Attorney General asserts that BlueHippo acted as a telemarketer without first registering with the Revenue Department or posting a surety bond, both of which, he contends, constitute unfair methods of competition or an unfair or deceptive act or practice in violation of W.Va. Code § 46A-6-104. (*Id.*, ¶¶ 124-26, 130-31.)

In that state court action, the Attorney General attempts to enforce the registration and bonding provisions against BlueHippo. The Attorney General seeks, *inter alia*, to bar BlueHippo from engaging in the sale of consumer goods in West Virginia, and to bar BlueHippo from seeking access to state or federal courts to enforce the obligations of West Virginia consumers. (State Court Compl. at 48-49, ¶¶ 1-4.) In addition, the Attorney General seeks a declaration that that BlueHippo's failure to register and post bond constitutes a violation of the Telemarketing Act, and upon such a finding, a declaration that all transactions between BlueHippo and West Virginia consumers are void, and that BlueHippo must refund all monies paid by West Virginia consumers. (*Id.* at 49-50, ¶¶ A-E.) The Attorney General also seeks civil penalties against BlueHippo under the Telemarketing Act. (*Id.* at 50, ¶ H.)

### E. Procedural History.

Following the institution of the State Court Action by the Attorney General in or about March 2007, BlueHippo filed the Complaint in this civil action on or about June 25, 2007. In its Complaint, BlueHippo sought declaratory and injunctive relief, pursuant to the Declaratory

---

[7] A true copy of the State Court Complaint, without exhibits, is attached as Exhibit 6 to Plaintiffs' Motion for Summary Judgment. A copy is also available for viewing electronically through CM/ECF as Exhibit A to Defendants' Notice of Removal in Civil Action No. 2:07-0220.

Judgment Act and 42 U.S.C. § 1983, that application of the Telemarketing Act registration and bonding requirements to BlueHippo violated both the First Amendment and Commerce Clause to the United States Constitution. Both Defendants subsequently filed motions to dismiss the Complaint. The Court denied the Revenue Secretary's motion, but granted the Attorney General's motion in part, dismissing BlueHippo's claims related to First Amendment violations (Counts I-II, IV-V) in deference to the ongoing state court action. (*See* Orders dated 10/18/07, 10/25/07.) Both defendants subsequently answered. Following discovery, BlueHippo now seeks the entry of summary judgment in its favor on the remaining claims in the Complaint, Counts III and VI.

### III. ARGUMENT

#### A. Governing Legal Standard.

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of "pointing out to the district court [ ] that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); *Celotrex*, 477 U.S. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991). "At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter

judgment accordingly." *Thompson Everett, Inc. v. National Cable Adver.*, 57 F.3d 1317, 1323 (4th Cir.1995). Applying those standards here, insofar as there are no disputed facts and BlueHippo is entitled to judgment in its favor as a matter of law, BlueHippo respectfully requests that this Court enter summary judgment in its favor on Counts III and VI of the Complaint.

### B. The State May Not Impose The Telemarketing Act's Registration And Bonding Requirements On BlueHippo, Since Its Business Is Wholly Interstate In Nature.

The Commerce Clause grants to Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const., Art. I, § 8, cl. 3. "Although the Constitution does not in terms limit the power of the States to regulate interstate commerce, [the United States Supreme Court has] long interpreted the Commerce Clause as an implicit restraint on state authority, even in the absence of a conflicting federal statute." *United Haulers Ass'n, Inc., v. Oneida-Herkimer Solid Waste Management Auth.*, 127 S.Ct. 1786, 1792 (2007) (citations omitted). Injury from state action that violates the Commerce Clause is redressable by 42 U.S.C. § 1983. *Dennis v. Higgins*, 498 U.S. 439, 447 (1991). As applied here, the Commerce Clause prevents the State of West Virginia from attempting to impose the Telemarketing Act's registration and bonding requirements on BlueHippo.

In *Crutcher v. Commonwealth of Kentucky*, 141 U.S. 47 (1891), the United States Supreme Court explained the constitutional limitation on the power of the states to require licensure of foreign corporations operating in interstate commerce:

> It has frequently been laid down by this court that the power of congress over interstate commerce is as absolute as it is over foreign commerce. Would any one pretend that a state legislature could prohibit a foreign corporation-an English or a French transportation company, for example-from coming into its borders, and landing goods and passengers at its wharves, and soliciting goods and passengers for a return voyage, without first obtaining a license from some state officer, and filing a sworn statement as to the amount of its capital stock paid in? And why not? Evidently because the matter is not within the province of state legislation, but within that of national legislation. *Steam-Ship Co. v. Tinker*, 94 U. S. 238. The prerogative, the responsibility, and the duty of providing for the security of the

citizens and the people of the United States in relation to foreign corporate bodies or foreign individuals with whom they may have relations of foreign commerce, belong to the government of the United States, and not to the governments of the several states; and confidence in that regard may be reposed in the national legislature without any anxiety or apprehension arising from the fact that the subject-matter is not within the province or jurisdiction of the state legislatures. And the same thing is exactly as true with regard to interstate commerce as it is with regard to foreign commerce. No difference is perceivable between the two. *Telegraph Co. v. Texas*, 105 U. S. 460; *Ferry Co. v. Pennsylvania*, 114 U. S. 196, 205, 211, 5 Sup. Ct. Rep. 826; *Steam-Ship Co. v. Pennsylvania*, 122 U. S. 326, 342, 7 Sup. Ct. Rep. 1118; *McCall v. California*, 136 U. S. 104, 110, 10 Sup. Ct. Rep. 881; *Railroad Co. v. Pennsylvania*, 136 U. S. 114, 118, 10 Sup. Ct. Rep. 958. As was said by Mr. Justice LAMAR, in the case last cited: "It is well settled by numerous decisions of this court that a state cannot, under the guise of a license tax, exclude from its jurisdiction a foreign corporation engaged in interstate commerce, or impose any burdens upon such commerce within its limits." We have repeatedly decided that a state law is unconstitutional and void which requires a party to take out a license for carrying on interstate commerce, no matter how specious the pretext may be for imposing it. *Pickard v. Car Co.*, 117 U. S. 34, 6 Sup. Ct. Rep. 635; *Robbins v. Taxing Dist.*, 120 U. S. 489, 7 Sup. Ct. Rep. 592; *Leloup v. Port of Mobile*, 127 U. S. 640, 8 Sup. Ct. Rep. 1380; *Asher v. Texas*, 128 U. S. 129, 9 Sup. Ct. Rep. 1; *Stoutenburgh v. Hennick*, 129 U. S. 141, 9 Sup. Ct. Rep. 256; *McCall v. California*, 136 U. S. 104, 10 Sup. Ct. Rep. 881; *Railroad Co. v. Pennsylvania*, 136 U. S. 114, 10 Sup. Ct. Rep. 958.

*Id.* at 57-58. The Supreme Court has repeatedly reaffirmed those principles in a series of decisions known as the "Drummer Cases," where foreign corporations sent traveling salesmen across state lines to promote their products. *See, e.g., Memphis Steam Laundry Cleaner v. Stone*, 342 U.S. 389, 392-93 (1952) (citing cases); *see also* Syl. pt. 4, *Underwood Typewriter Co. v. Piggott*, 60 W.Va. 532, 55 S.E. 664 (1906) (same). Thus, if BlueHippo's transactions with West Virginia consumers are interstate in nature, the State cannot constitutionally require BlueHippo to comply with the Telemarketing Act's registration or bonding requirements.

In *Eli Lilly & Co. v. Sav-On-Drugs, Inc.*, 366 U.S. 276 (1961), the Supreme Court explained the standard for determining the constitutionality of state licensing requirements as follows:

> It is well established that New Jersey cannot require Lilly [the foreign corporation] to get a certificate of authority to do business in the State if its

>   participation in this trade [pharmaceutical product sales] is limited to its wholly
>   interstate sales to New Jersey wholesalers. Under the authority of the so-called
>   "drummer cases," . . .Lilly is free to send salesmen into New Jersey to promote
>   this interstate trade without interference from regulations imposed by the State.
>   On the other hand, it is equally well settled that if Lilly is engaged in intrastate as
>   well as interstate aspects of the New Jersey drug business, the State can require it
>   to get a certificate of authority to do business. In such a situation, Lilly could not
>   escape state regulation because it is also engaged in interstate commerce.

*Id.* at 278-79 (footnotes and citations omitted); *see also Radio WHWK Inc. v. Yarber*, 838 F.2d 1439, 1443 (5th Cir. 1988) ("Thus, where the business of the foreign corporation is interstate in nature, a state may not burden such business with state qualification requirements unless the business of the corporation includes a distinct and separable intrastate focus, . . . or the corporation has 'localized' its business within the state, . . . Further, . . . for purposes of commerce clause analysis, interstate commerce includes 'any activity of an intrastate nature which [is] an integral part of an overall interstate pattern or transaction.'")

In *Eli Lilly*, the Court determined that Lilly was engaged in intrastate commerce because, *inter alia*, it maintained a sales force of 18 people who "work[ed] out of a big office in New Jersey, with Lilly's name on the door and in the lobby of the building," and who, "with Lilly's district manager and secretary in charge, have been regularly engaged in work for Lilly which relates directly to the intrastate aspects of the sale of Lilly's products"; namely, sales between instate wholesalers and instate hospitals, physicians, and drugstores. *Id.* at 280-81. Thus, notwithstanding that Lilly also separately engaged in interstate sales between Lilly and the New Jersey wholesalers, because the contract that Lilly sought to enforce was entirely separate from its interstate, wholesaler transactions, the Court determined that the State of New Jersey could require Lilly to obtain a certificate of authority to do business there. *Id.* at 282-83.

In contrast, in *Allenberg Cotton Co., Inc. v. Pittman*, 419 U.S. 20 (1974), the Supreme Court determined that a cotton merchant's business was interstate in nature, such that the State of

Mississippi could not require the company to obtain a certificate of authority, nor deny the company access to state courts to enforce its contract with a local farmer. In making that determination, the Court noted that the foreign cotton merchant:

> has no office in Mississippi, nor does it own or operate a warehouse there; it has no employees soliciting business in Mississippi of otherwise operating there on a regular basis; its contracts are arranged through an independent broker, whose commission is paid either by appellant or by the farmer himself and who has no authority to enter into contracts on behalf of appellant. These facts are in sharp contrast to the situation in Eli Lilly, where Lilly operated a New Jersey office with 18 salaried employees whose job was to promote use of Lilly's products. 366 U.S., at 279-281, 81 S.Ct. at 1318-1320. There is no indication that the cotton which makes up appellant's 'perpetual inventory' in Mississippi is anything other than what appellant has claimed it to be, namely, cotton which is awaiting necessary sorting and classification as a prerequisite to its shipment in interstate commerce.
>
> . . . .
>
> In short, appellant's contacts with Mississippi do not exhibit the sort of localization or intrastate character which we have required in situations where a State seeks to require a foreign corporation to qualify to do business.

*Id.* at 33; *see also Yarber*, 838 F.2d at 1443-44 (remote broadcasting from location in Mississippi, which entailed the transmission of live, promotional messages from the premises of advertisers in Mississippi to an Alabama station from which the messages were re-broadcast via FCC-licensed interstate transmitter to listeners in Alabama and Mississippi, was "essential to and inseparable from the underlying interstate sales transactions" of selling radio air time across state boundaries, and transactions thus fell within the protection of the Commerce Clause).

In this case, the undisputed facts establish that BlueHippo's business is wholly interstate in nature. As set forth above, BlueHippo offers to sell computers and other consumer electronics nationwide through print, radio, and television advertisements, and on the Internet.[8]

---

[8] Moreover, even though it would not necessarily take BlueHippo's activities outside the protection of the Commerce Clause, BlueHippo does not specifically direct its advertisements at or to West Virginia consumers. *See Yarber*, 838 F.2d at 1444-45 ("Although Radio WHKW maintained a substantial sales

BlueHippo's national advertisements and Internet website include a telephone number for consumers to call if they wish to purchase a computer. BlueHippo did not and does not initiate calls to consumers – including West Virginia consumers. Rather, all West Virginia consumers with whom BlueHippo has attempted to enter or has entered into a sales transaction initiated the telephone call to BlueHippo. BlueHippo has no office, call center, or other physical presence in West Virginia. Nor does BlueHippo maintain any employees, agents, representatives or salespeople in West Virginia. BlueHippo also does not maintain inventory – instead, the original manufacturers ship products directly to consumers.

Thus, like the cotton merchant in *Allenberg*, which had no physical location, employees, or other regular operations in Mississippi, BlueHippo's contacts and transactions with consumers in West Virginia operate wholly in interstate commerce. *See also* Syl. pt. 4, *Underwood Typewriter Co. v. Piggott*, 60 W.Va. 532, 55 S.E. 664 (1906) ("A foreign corporation, which sells and delivers goods, merchandise, machinery, or other articles of trade and commerce in this state upon orders taken therefor by its agents and traveling salesmen, and forwarded to it, and not otherwise, and transacts no other business in the state, does not transact or carry on business in this state, within the meaning of [W.Va. Code provision requiring registration to do business by foreign corporations], and is not required to comply with the provisions of said statute, nor

---

force in Columbus, Mississippi, that factor alone is insufficient to establish either localization or a distinct and separable business activity within the state. The constitutional right to transact business in interstate commerce without obstruction from state regulation includes the right to search out those business opportunities. . . .A foreign corporation should be free to maintain a sales operation promoting interstate sales within a state without fear that its rights will not be enforceable in the state. We note that the test in *Eli Lilly* was not the thirty-eight salespersons that the company employed within the state. Rather, the role of those employees in soliciting and participating in distinctly intrastate sales--sales between merchants and retailers--controlled the outcome."). Rather, BlueHippo employs various companies who determine the placement of advertisements on a national basis, *e.g.*, with particular syndicated television programs or in coupon mailers, some of which may be broadcast or received in West Virginia.

denied by it the power to bring and maintain suits and actions for the enforcement of such contracts.")

Because BlueHippo is carrying on interstate commerce, the State of West Virginia cannot require it to register as a telemarketer or post security as a condition of doing business in this state. Nor may the State deny BlueHippo access to West Virginia courts or refuse to recognize or enforce its contracts with West Virginia consumers, as the Attorney General seeks to do in the State Court Action. *See Allenberg*, 419 U.S. at 34 (holding that "Mississippi's refusal to honor and enforce contracts made for interstate or foreign commerce is repugnant to the Commerce Clause"). Accordingly, based upon the undisputed facts set forth above, summary judgment should be entered in BlueHippo's favor, and against both Defendants, on Counts III and VI of the Complaint.

## IV. **CONCLUSION**

For the foregoing reasons, Plaintiffs BlueHippo Capital LLC and BlueHippo Funding LLC respectfully request that this Court grant its Motion and enter summary judgment in favor of BlueHippo on Counts III and VI of the Complaint, (a) declaring that the telemarketing and registration provisions violate the Commerce Clause, and (b) enjoining the Defendant State officials from attempting to enforce those provisions against BlueHippo.

**BLUEHIPPO FUNDING, LLC and
BLUEHIPPO CAPITAL, LLC**
By Counsel

/s/ Kara L. Cunningham
Kara L. Cunningham (WVSB #8148)
Russell D. Jessee (WVSB #10020)
STEPTOE & JOHNSON, PLLC
Chase Tower – Eighth Floor
P.O. Box 1588
Charleston, West Virginia 25326-1588
Kara.Cunningham@steptoe-johnson.com
Russell.Jessee@steptoe-johnson.com
Telephone:	(304) 353-8189
Telecopier:	(304) 353-8180

Charles Lee Eisen, Esq.
Nicholas G. Terris, Esq.
Kirkpatrick & Lockhart Preston Gates Ellis LLP
1601 K Street, NW
Washington, D.C. 20006-1600
Telephone:	(202) 778-9000
Telecopier:	(202) 778-9100
  *Counsel for Plaintiffs BlueHippo Funding, LLC
  and BlueHippo Capital LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**BLUEHIPPO FUNDING, LLC,**
  a Maryland limited liability corporation, and
**BLUEHIPPO CAPITAL, L.L.C.,**
  a Nevada limited liability corporation

      Plaintiffs,

v.                                                    C.A. No. 2:07-0399
                                                    Judge Copenhaver

**DARRELL V. McGRAW, JR.,**
  in his official capacity as ATTORNEY GENERAL
  of the STATE OF WEST VIRGINIA, and
**VIRGIL T. HELTON,**
  in his official capacity as SECRETARY
  of the DEPARTMENT OF REVENUE
  of the STATE OF WEST VIRGINIA,

      Defendants.

## CERTIFICATE OF SERVICE

I certify that on this 8th day of May, 2008, a copy of the foregoing "**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**" was electronically filed with the clerk of this Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

| | |
|---|---|
| Charli Fulton, Esq.<br>Senior Assistant Attorney General<br>Consumer Protection Division<br>Post Office Box 1789<br>Charleston, West Virginia 25326-1789 | Barbara H. Allen, Esq.<br>Katherine A. Schultz, Esq.<br>Office of the Attorney General<br>State Capitol Complex<br>Building 1, Room W-435<br>Charleston, WV 25305 |

                                                /qs/ Kara L. Cunningham